UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DARIUS JOSHGHANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-CV-1359-ZMB |
| | ) | |
| SERVICESOURCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on cross-motions for summary judgment. In this discrimination action, Plaintiff Darius Joshghani brings a dozen claims against Defendant ServiceSource for wrongful treatment related to his disabilities and status as a veteran. He moves for partial summary judgment on two issues: (1) that he is disabled for purposes of the Americans with Disability Act (ADA) and Missouri Human Rights Act (MHRA), and (2) that ServiceSource has produced no evidence to support an affirmative defense of failure to mitigate damages. At the same time, ServiceSource seeks summary judgment on all of Joshghani's claims. Because there is no genuine dispute of material fact that Joshghani is disabled or that other comparable positions were available before he found a new job, the Court grants him partial summary judgment on both issues. Further, a reasonable jury could find that ServiceSource's cited basis for his termination was pretextual, so the Court must deny summary judgment on the disability-discrimination claims. However, Joshghani has failed to establish even a prima facie case for his other claims, so the Court grants the remainder of ServiceSource's motion.

**BACKGROUND**

I.    **Factual Background[1]**

ServiceSource is a contractor that offers a variety of services for government facilities. Doc. 39 ¶ 3; Doc. 39-7 at 23–24. In 2019, the company hired Joshghani as a SCIF Representative knowing that he was a Navy veteran with certain disabilities. Doc. 3 ¶¶ 8, 18, 23, 26; Doc. 15 ¶¶ 8, 18, 23, 26; Doc. 49 ¶ 3. Specifically, Joshghani "suffers from bulging discs in his back, PTSD, anxiety, migraines, and . . . bilateral leg radiculopathy." Doc. 48 ¶¶ 1, 9. These conditions cause him difficulty in sitting, standing, running, and lifting. *Id.* ¶ 15. As such, "ServiceSource provided [Joshghani] with reasonable accommodation[s] under the ADA," which included allowing him to wear sneakers instead of dress shoes and to take frequent breaks to move around. *Id.* ¶¶ 18, 20–22.

At some point during his tenure, Joshghani heard colleagues make negative comments about veterans and his disability accommodations. In particular, unnamed coworkers said that veterans "were milking and gaming the system" and "were brainwashed to die for their country," "Marines are bullet sponges," and "[t]o suck it up because you served in the military." Doc. 53 ¶ 24. Joshghani also heard Vice President of Operations Richard Stonestreet tell a veteran "that he should calm down because he was not being shot at," *id.* ¶¶ 25–26, 28, and another veteran was called "thumbs" behind his back on account of missing fingers on his hands, *id.* ¶ 32. Regarding his own disabilities, Joshghani heard "disparaging comments about [his] use of accommodations and wearing tennis shoes," including a supervisor's comment that he "shouldn't be allow to" wear them and that they did not "look professional." *Id.* ¶¶ 20–21. Other coworkers said Joshghani "was avoiding work or not working hard enough because [he] utilized his accommodation of frequent breaks," and Stonestreet similarly told him that "he could take on more work." *Id.* ¶¶ 22–23.

---

[1] The Court accepts as true the allegations that ServiceSource admitted in its Answer, Doc. 15, and the uncontroverted facts from each Statement of Uncontroverted Material Facts (SUMF), Docs. 41, 44, 51. The latter category includes responses such as "fails to state a material fact" and "denied" that do not provide a specific basis for contesting an asserted fact or cite to evidence from the record. *See* E.D. MO. L.R. 4.01(E) ("All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."); *see also* FED. R. CIV. P. 56(c)(2).

2

During his time at ServiceSource, Joshghani received two promotions. Doc. 49 ¶ 3. Additionally, although the details are unclear, he was asked to take on the duties of a "Buyer" in Spring 2023. *See id.* ¶ 31. Joshghani refused to accept the new responsibilities due to "perceived discrimination," *id.*, as ServiceSource "expect[ed] people that served in the military to just shut up and do their job," Doc. 44-1 at 167. Significantly, he did not believe the extra responsibilities had any relation to his disabilities. *Id.* In contrast, another employee who was neither a veteran nor disabled received a promotion with a pay raise when she became a Buyer. Doc. 53 ¶¶ 29–30.

On April 28, 2023, ServiceSource HR Generalist Jacqua Outlaw received a verbal complaint about Joshghani from one of his coworkers. Doc. 44-3 at 1. While disputing some of the allegations, Joshghani acknowledges that Julie Brown submitted a written harassment complaint that accuses him of revealing a picture of her in a burlesque-style costume to others in the office and mocking her. Doc. 49 ¶ 13; Doc. 44-2 at 19–21. Outlaw apparently informed Joshghani of the complaint in some fashion and placed him on administrative leave pending an investigation. Doc. 49 ¶ 15; Doc. 49-1 at 103. She then interviewed several witnesses. Doc. 49 ¶ 16. One described Joshghani's comments as "childish," *id.* ¶ 17, while another reported that he said, "Look at this [picture] and don't throw up in your mouth," Doc. 44-3 at 4. According to Outlaw, Joshghani denied knowing about the photo, but he insists he was never asked about it. *Id.* ¶ 18. After the investigation, ServiceSource fired Joshghani—purportedly for violating its policies by "harassing and bullying a transgendered employee and not being truthful during the investigation." *Id.* ¶ 19. Joshghani disputes that justification and instead cites discriminatory and retaliatory animus. *Id.*

To support his discrimination claim, Joshghani highlights a separate complaint that Brown made against another employee three months earlier. Specifically, Brown accused Stonestreet of

misgendering her in the workplace on two separate occasions. Doc. 53 ¶¶ 4–5; Doc. 44-3 at 20. Brown twice raised the issue to Outlaw, noting that she felt disrespected and "considered the workplace a hostile work environment." Doc. 53 ¶¶ 4–5, 7. But Outlaw did not have Brown complete a written complaint, *id.* ¶ 6, and Stonestreet received only a verbal warning on both occasions, *id.* ¶ 8, despite ServiceSource's "progressive discipline policy," which called for at least a written warning, *id.* ¶ 3.

## II.      Procedural Background

Joshghani originally filed suit in Missouri state court, but ServiceSource timely removed the case. Doc. 1. In his Petition, Joshghani asserts 12 counts against ServiceSource that stem from violations of the ADA, MHRA, and Uniformed Services Employment and Reemployment Rights Act (USERRA). Doc. 3 ¶¶ 51–179. Specifically, he advances claims for: (1) discrimination based on disability and veteran status; (2) harassment (i.e. hostile work environment) based on his disabilities and veteran status; (3) a failure-to-promote claim based on his disabilities; and (4) retaliation for engaging in protected activity based on his disabilities. *Id.* ServiceSource answered the Petition, Doc. 15, and the case proceeded to discovery, Doc. 18.

At the close of discovery, the parties filed cross-motions for summary judgment. Docs. 39, 42. Joshghani moved for partial summary judgment on two issues: (1) whether he is disabled under the ADA and MHRA and (2) whether ServiceSource identified sufficient evidence to support its affirmative defense that he failed to mitigate damages. Doc. 39. ServiceSource countered by moving for summary judgment on all counts. Doc. 42. The parties filed several SUMFs, Docs. 41, 44, 51, and responses, Docs. 48, 49, 53. Both motions are now ripe.

4

**LEGAL STANDARD**

Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "When deciding a motion for summary judgment, a court is required to view disputed facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor." *Sherr v. HealthEast Care Sys.*, 999 F.3d 589, 597 (8th Cir. 2021) (citation omitted). Courts may not "weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008) (citation omitted). Instead, "the focus is on whether there are genuine issues of material fact for trial." *Sherr*, 999 F.3d at 597 (citation omitted). "A genuine issue for trial exists when a reasonable jury could return a verdict for the nonmoving party." *Huber v. Westar Foods, Inc.*, 139 F.4th 615, 620 (8th Cir. 2025) (quotation omitted). "Substantive law in the relevant area dictates which facts are material, as only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Sherr*, 999 F.3d at 597 (quotation and alteration omitted). While the initial burden rests with the movant, once the motion is properly supported, "the plaintiff has an affirmative burden to designate specific facts creating a triable controversy." *Midwest Oilseeds v. Limagrain Genetics Corp.*, 387 F.3d 705, 714 (8th Cir. 2004).

**DISCUSSION**

Both parties have moved for summary judgment. The Court grants Joshghani's motion for partial summary judgment in full, as he is entitled to judgment that he qualifies as disabled and that he did not fail to mitigate his damages. Likewise, ServiceSource demonstrates that each of Joshghani's claims fail as a matter of law, with the exception of his disability discrimination by termination claim. The Court will address each party's motions in turn.

5

**I.      Joshghani's Motion for Partial Summary Judgment**

*a.  ADA and MHRA Disabilities*

First, Joshghani contends that he is entitled to a judgment that he qualifies as disabled under both the ADA and the MHRA. Doc. 40 at 3–6. While the briefing on both sides was lacking, the Court agrees in light of ServiceSource's failure to dispute several significant facts.

To qualify as disabled under the ADA, Joshghani must put forward evidence that he suffers from "a physical or mental impairment that substantially limits one or more major life activities," such as "caring for [himself], performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working, as well as sitting, standing, lifting, and reaching." *Irving v. Dierbergs Mkt.*, No. 4:21-CV-506-RLW, 2023 WL 2536363, at *4 (E.D. Mo. Mar. 16, 2023) (citations omitted). The term "substantially limits" is to be "construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(91)(i); *see also Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 756 (8th Cir. 2016) (citation omitted).  Similarly, under the MHRA, disability is defined as "a physical or mental impairment which substantially limits one or more . . . major life activities . . . which with or without reasonable accommodation does not interfere with performing the job." MO. REV. STAT. § 213.010(5). Major life activities include those "which affect employability such as communication, ambulation, self-care, socialization, education, vocational training, employment, and transportation." *Feldman v. Patrish, L.L.C.*, 674 S.W.3d 59, 63 (Mo. Ct. App. 2023) (citations omitted). Alternatively, under both statutory schemes, a person can qualify as disabled if they are "regarded as having such an impairment" or have "a record of having such an impairment." *Id.* (MHRA); *see also Irving*, 2023 WL 2536363 at *4 (ADA).

Joshghani claims he suffers from various medical impairments, Doc. 40 at 3, "including bulging discs in his back, PTSD, anxiety, migraines, and nerve pain in both legs (bilateral leg

6

radiculopathy)." Doc. 41 ¶ 1; Doc. 48 at ¶ 1. These impairments "limit [his] ability to sit, stand, run and lift." Doc. 41 ¶ 15; Doc. 48 at ¶ 15. To support this conclusion, Joshghani provides documents from AbillityOne—a program for workers with qualifying disabilities through which Joshghani was hired. Doc. 48 ¶¶ 4–5. These records indicate that his nerve conditions and disc issues impact his mobility and work tolerance. Doc. 43-2 at 13; *see also id.* at 7–10, 12–18. Specifically, Joshghani is "unable to stand/walk for 30 minutes at a time," *id.* at 17, and incapable of sitting for "[2] hours at a time," *id.* at 9. Similarly, Joshghani needs to "take various breaks throughout his day to prevent pain throughout his body." *Id.* at 13–14. ServiceSource admits that it gave Joshghani "reasonable accommodation[s] under the ADA," which included allowing him "to wear sneakers . . . for his back," Doc. 48 ¶ 18, and "tak[e] breaks and mov[e] around," *id.* ¶¶ 20–22; Doc. 41 ¶¶ 20–22. Thus, Joshghani contends he had "impairments that limited one or more major life activities," and that he could "perform his job duties . . . with or without accommodation," which supports a finding that he is disabled within the ADA and MHRA's meaning. *Id.* at 5.

In opposing summary judgment, ServiceSource offers no evidence to dispute Joshghani's characterization of his disabilities. Instead, the company contends[2] that the AbilityOne documentation "do[es] not resolve the fact-intensive question of whether Plaintiff was 'substantially limited' in any major life activity." Doc. 47 at 3. Additionally, ServiceSource believes that the fact that Joshghani "worked full-time for ServiceSource for several years" and "performed the essential duties of his positions with . . . accommodations" is sufficient for "a factfinder [to] conclude that any limitations were intermittent . . . or not substantially limiting." *Id.*

---

[2] ServiceSource's main argument is that the Court can assume without deciding that Joshghani is disabled because it prevails on its own motion for summary judgment. Doc. 47 at 2–4. But given the Court's conclusion that the disability-discrimination claims survive, *see supra* at 1, this nonargument does no work and thus will not be addressed further.

Joshghani is entitled to a partial judgment that he qualifies as disabled under both statutes. Based on his deposition testimony, the AbilityOne records, and the unrebutted assertions in the SUMF, Joshghani has established that he suffers from various ailments that restrict his "ability to sit, stand, run and lift" compared to an "average person." Doc. 41 ¶¶ 1–16. These facts, coupled with total absence of any competing evidence and ServiceSource's own admission that it gave Joshghani what it believed to be ADA accommodations, Doc. 48 ¶ 22, are sufficient to meet the relatively low burden that his disabilities substantially limited major life activities. *See Williams v. AT&T Mobility Servs.*, 186 F. Supp. 3d 816, 823 (W.D. Tenn. 2016) (granting partial summary judgment as to an ADA-disability determination based on the plaintiff's undisputed testimony coupled with record evidence). Further, given that Joshghani's disabilities impact his ambulation, and because ServiceSource admitted that Joshghani can perform his tasks without interference from his proffered disabilities, s*ee* Doc. 48 ¶ 15, he also meets the definition of disabled under the MHRA.[3]

ServiceSource's limited arguments to the contrary are unavailing. While not meaningfully briefed by the parties, ServiceSource may well be right an employee's qualification under the AbilityOne Program does not automatically mean that they are disabled for purposes of the ADA and MHRA. *See* 41 C.F.R. 51-1.3 ¶ 13 ("[S]everely disabled . . . mean[s] . . . a severe physical or mental impairment . . . which so limits the person's functional capabilities . . . that the individual is unable to engage in normal competitive employment over an extended period of time."). But the company ignores the information about Joshghani's disabilities contained in the AbilityOne

---

[3] But even if he did not meet the definition of actually disabled under the MHRA, Joshghani has provided sufficient evidence that his employer mistakenly regarded him as disabled. *Elder v. Washington Univ. – St. Louis*, --- S.W.3d ---, 2026 WL 873473, at *12 (Mo. Ct. App. Mar. 31, 2026) (stating the standard for a "regarded as" disability under the MHRA). The fact that ServiceSource provided "reasonable accommodations" under the ADA indicates that it at least perceived Joshghani's ailments as a disability. It is difficult to see, on this undisputed record, how ServiceSource can credibly argue that Joshghani was either not disabled or not regarded by it as disabled.

documents, not to mention the other uncontested record evidence that supports a finding that his impairments substantially limited several major life activities. *See Bloomer v. Mo. Dep't of Corr.*, No. 1:15-CV-174-RLW, 2017 WL 3129757, at *2 (E.D. Mo. July 21, 2017) (finding that a non-movant cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," but rather must "present sufficient evidence . . . which would enable a jury to return a verdict" in their favor). ServiceSource's remaining point is similarly unavailing. Just because Joshghani could perform work tasks does not undermine a finding that he is disabled. Indeed, the ADA-disability inquiry is about whether Joshghani suffers from an impairment limiting a major life activity, not about his ability to work generally. *See Irving*, 2023 WL 2536363 at *4. This argument is even less persuasive for the MHRA because the statute *requires* Joshghani be able to perform his job with or without the accommodations. *See* MO. REV. STAT. § 213.010(5). Accordingly, Joshghani is entitled to summary judgment on the claim that he is disabled within the meaning of the ADA and MHRA. Based on the undisputed record, the Court finds that summary judgment on Joshghani's disability is warranted.

One final word is warranted regarding the scope of this partial grant of summary judgment. Joshghani argues that he has established that he is disabled under the ADA and MHRA as a matter of law, and the Court agrees. But the relevant jury instructions call for specific impairments rather than relying on a generic status of "disabled." *See* EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 9.40 (2025); MISSOURI APPROVED JURY INSTRUCTIONS (CIVIL) § 38.01(B) (8th ed. 2023). Without guidance from the parties, the Court based its analysis on three conditions—paralysis of the sciatic nerve, paralysis of the anterior crural nerve, and invertible disc syndrome—that limit Joshghani's ability to sit or move for extended periods of time. Doc. 39-4 at 2–3. These conditions are the most compelling basis for a disability finding, and they also avoid the variance

9

between the Petition and Joshghani's summary-judgment briefing.[4] As such, barring additional justification, the Court intends to instruct the jury only on these three impairments.

### b.    *Failure to Mitigate Damages*

Joshghani also argues that ServiceSource has not presented a triable issue as to whether he failed to mitigate his damages. Doc. 40 at 6–8. In particular, Joshghani highlights his deposition testimony that he worked part time, sold plasma, obtained unemployment benefits, and applied for multiple jobs each week before finding comparable employment one-year after his termination. *See id.* at 7–8. ServiceSource counters that a "generalized estimate[] of how many jobs [Joshghani] applied for during that year, without comprehensive documentation or detail about the positions' equivalence" such as a "contemporaneous log of applications" or other "documentary proof," means that summary judgment would be inappropriate on this point. Doc. 47 at 4–5. And without further explanation, the company argues that the remaining undisputed facts "do[] not compel the conclusion that [he] fully mitigated." *Id.* at 5. Joshghani counters that these arguments are an attempt to shift the burden from ServiceSource to him and argues that "activities and ability to secure another position after a year's worth of efforts are not arguments supporting a failure to mitigate." Doc. 52 at 3.

Because Joshghani claims he was harmed by a discriminatory employment practice, he "is subject to an affirmative duty to mitigate his damages by reasonably seeking and accepting other suitable employment." *Mathieu v. Gopher News Co.*, 273 F.3d 769, 783 (8th Cir. 2001). That duty is not onerous and requires only "reasonable diligence" in finding suitable employment. *Id.* at 783–84.

---

[4] There are several discrepancies in Joshghani's characterization of his disabilities. Notably, the Petition does not mention migraines or sinusitis. *See* Doc. 3 ¶ 24. *But see* Doc. 40 (listing both conditions); 41 ¶ 1 (listing migraines). Further, the description of other disabilities has shifted slightly. *Compare* Doc. 3 ¶ 24, *with* Doc. 41 ¶ 1. Because Joshghani never moved to amend his Petition to include these impairments, let alone showed good cause for his failure to do so by the deadline set in the case management order, the Court will assume they should not be considered as an independent basis for liability. *See Cheeks v. Belmar*, 162 F.4th 899, 907 (8th Cir. 2025) (emphasizing that the application of the good-cause standard is "not optional" for untimely pleading amendments).

10

For example, the duty to mitigate did not require Joshghani to "go into another line of work, accept a demotion, or take a demeaning position." *Townsend v. Bayer Corp.*, 774 F.3d 446, 466 (8th Cir. 2014) (quotation omitted). Significantly, ServiceSource bears the burden of production and must show "that there were suitable positions and that the plaintiff failed to use reasonable care in seeking them." *Murphy v. FedEx Nat. LTL*, No. 4:07-CV-1247-JCH, 2009 WL 1310252, at \*5 (E.D. Mo. May 11, 2009) (quoting *Denesha v. Farmers Ins. Exch.,* 161 F.3d 491, 502 (8th Cir. 1998)).

At no point does ServiceSource so much as suggest that there were positions available that Joshghani failed to apply for. Instead, ServiceSource appears to rely on the fact that the existing record does not resolve mitigation as a matter of law. Doc. 47 at 5. That argument may have been sufficient if Joshghani had the burden, but without some evidence, ServiceSource has failed to meet even its limited burden of production. In other words, ServiceSource "may not simply rest on the hope of discrediting [Joshghani's] evidence at trial" without at least showing that Joshghani's testimony is not "internally consistent, unequivocal, and in full accord with the documentary evidence." *See Erickson v. Nationstar Mortg.*, 31 F.4th 1044, 1048 (8th Cir. 2022) (citations omitted). Accordingly, summary judgment is granted as to the affirmative defense of failure to mitigate.[5]

## II.    ServiceSource's Motion for Summary Judgment

ServiceSource also moves for summary judgment as to all of Joshghani's claims. At the outset, it is important to note how Joshghani must prove his ADA and MHRA (but not USERRA) claims. Because there is no direct evidence of discrimination, Joshghani must show that

---

[5] Once again, while prevailing in the abstract, Joshghani fails to specify the precise relief he seeks. In granting summary judgment, the Court has determined that it will not instruct the jury on the affirmative defense of failure to mitigate. *See* EIGHTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 9.70 (2025) (second element, first optional insert). But as Joshghani does not address the issue of successful mitigation, the Court intends to permit such evidence as it relates to his burden to prove damages. *See id.* (first element).

ServiceSource violated the ADA and MHRA under the *McDonnell Douglas* burden-shifting framework. *See Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010). The burden first rests with Joshghani to prove a prima facie case of discrimination or other unlawful action. *Id.* Then, the burden "shifts to [ServiceSource] to articulate some legitimate, nondiscriminatory reason for [its] actions." *Id.* Finally, the burden shifts back to Joshghani "to show [ServiceSource's] justification is a pretext." *Id.* But any pretext must provide "sufficient evidence for a reasonable trier of fact to infer discrimination." *Id.*

### a. Disability Discrimination

First, ServiceSource asserts entitlement to summary judgment on Joshghani's disability discrimination claims. Doc. 43 at 5–8, 13–14. ServiceSource argues that Joshghani has failed to prove that he suffered an adverse employment action, *id.* at 6, and that his violation of the anti-harassment policy was a legitimate, non-pretextual reason for terminating him, *id.* at 13–14.

Joshghani resists ServiceSource's arguments by highlighting circumstantial evidence that his disability was a "motivating factor in his termination and treatment." Doc. 50 at 3. In terms of adverse employment actions, Joshghani highlights his termination and the "assign[ment] [of] additional duties without increased pay." *Id.* at 3, 7. He then offers multiple examples of pretext to support an inference of discrimination for his termination, including, as relevant here, that Stonestreet was not disciplined as harshly as disabled employees under ServiceSource's progressive policy. *Id.* at 6. On this point, ServiceSource suggests that Stonestreet is not similarly situated enough to be a comparator because he is not a "non-disabled employee who [was retained] after being accused by multiple witnesses of mocking a coworker with a personal image, disregarding direction to stop, and then denying the conduct during an HR investigation." Doc. 54 at 3.

Joshghani argues that he was discriminated against by ServiceSource when he was terminated and told to take on additional responsibilities. Doc. 50 at 3, 7. To make a prima facie case, Joshghani must show that he "(1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered an adverse employment action as a result of the disability." *Goosen v. Minn. Dep't of Transp.*, 105 F.4th 1034, 1040 (8th Cir. 2024). [6]

The circumstances of Joshghani's termination are sufficient to preclude summary judgment. "Termination, of course, is an adverse action," *Hill v. Walker*, 737 F.3d 1209, 1219 (8th Cir. 2013), and Joshghani offers pretext as the basis to overcome ServiceSource's assertion that he violated company policy—meaning that evidence of pretext is the ultimate inquiry, *see Lake v. Yellow Transp.*, 596 F.3d 871, 874 (8th Cir. 2010). Pretext can be proved in a number of ways, including "by showing that an employer (1) failed to follow its own policies, [or] (2) treated similarly-situated employees in a disparate manner." *E.E.O.C. v. Prod. Fabricators*, 763 F.3d 963, 970 (8th Cir. 2014) (citation omitted). To demonstrate the latter, a comparator employee treated differently than the plaintiff "must be similarly situated in all relevant respects," which means they "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quotations omitted).

While Joshghani offers multiple comparators, the company's divergent treatment of Stonestreet is sufficient to preclude summary judgment. According to Outlaw, Stonestreet and Joshghani are held to the same standards with respect to the anti-harassment policy. *See* Doc. 51-1 at 6. Similarly, it is undisputed that Joshghani and Stonestreet both dealt with Outlaw regarding

---

[6] As noted above, Joshghani has already satisfied the first element. *See supra* at 8–9.

13

Brown's complaints. Doc. 51 ¶¶ 1, 4. And contrary to ServiceSource's assertions, Stonestreet is a valid comparator for the purposes of Joshghani's claim.[7]

"The similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone." *Doucette v. Morrison Cnty.*, 763 F.3d 978, 984 (8th Cir. 2014) (citation omitted). To be sure, the underlying policy violations here were different. Stonestreet referred to Brown by the wrong gender on two occasions, Doc. 53 ¶¶ 4–5, while Joshghani actively circulated a photo of Brown and mocked her choice of clothing, *see* Doc. 49 ¶ 13. Yet Stonestreet—like Joshghani— violated the anti-harassment policy. Doc. 43-5 at 218–19. And while misgendering could be inadvertent, the fact Stonestreet did it multiple times lessens the likelihood that it was unintentional. The difference, then, is that Stonestreet was given multiple verbal warnings despite a progressive discipline policy, Doc. 43-5 at 122 ¶¶ 3–8; *id.* at 103 ¶¶ 24–25, 104 ¶¶ 4–7; *id.* at 121 ¶¶ 16–24, while Joshghani was fired, Doc. 49 ¶ 4. While it is a relatively close call, a reasonable jury could infer discriminatory motive based on the allegations when viewed in a light most favorable to Joshghani. As such, summary judgment must be denied on the discrimination-through-termination claims.

However, Joshghani does not fare as well on his alternative theory of adverse action: that he experienced a material increase in his job duties constituting adverse action. "An increased workload that materially changes an employee's duties can constitute an adverse employment action." *Kelleher v. Wal-Mart Stores*, 817 F.3d 624, 631 (8th Cir. 2016) (quotation omitted). But as ServiceSource notes, Joshghani's "existing job duties did not change," and his "own testimony

---

[7] Although ServiceSource argues that Joshghani's denial of his conduct is relevant to the comparator analysis, it is not clear why. ServiceSource's stated reason for firing Joshghani was because he violated the anti-harassment policy, *see* Doc. 43 at 13–14, not that he was dishonest. While deceitfulness certainly could be relevant, the Court will not endeavor to make the argument for the company, particularly given that there is no evidence to suggest that this was a basis for Joshghani's firing.

indicates that he was being trained for a position." Doc. 43 at 7. Joshghani states that ServiceSource took "creative liberties" in interpreting his statements to undercut a claim of discrimination, but he did not substantively deny that he was merely training for a Buyer position. Doc. 50 at 7.

Joshghani's theory is untenable. He contends that he refused to accept additional duties without a promotion, *see* Doc. 53 ¶ 31, which is consistent with ServiceSource's position that he was not given more responsibilities. Rather, Joshghani was, at most, "training on the duties." Doc. 43-1 at 107 ¶¶ 12–25; *see In re Kemp*, 894 F.3d 900, 906 (8th Cir. 2018) ("Minor changes in duties or working conditions that cause no materially significant disadvantage do not meet the standard of an adverse employment action." (citation omitted)). As such, while Joshghani's discrimination claims survive summary judgment, they do so only as to the adverse employment action of termination.

### b.   *Hostile Work Environment*

ServiceSource also moves for summary judgment as to Joshghani's claims of a hostile work environment. ServiceSource contends that the remarks Joshghani highlights were not sufficiently "severe or pervasive harassment" to warrant relief.[8] Doc. 43 at 9. Joshghani alleges that the workplace was permeated with discriminatory remarks about his disability, which included: comments by co-workers and a supervisor that "he shouldn't be allowed to" wear sneakers and that they did not "look professional"; comments that he was avoiding work by utilizing his accommodation of moving around and taking breaks; and Stonestreet's statement that he could take on more work because he moved around a lot. Doc. 50 at 10. Joshghani also suggests other comments about veterans show a hostile work environment, including that: "Stonestreet told

---

[8] Joshghani is simply incorrect that ServiceSource "makes no argument challenging [his] claim of a hostile work environment based on [his] veteran status in violation of USERRA." Doc. 50 at 9 n.3. *But see* Doc. 43 9 ("[T]he comments here are workplace slights, which when considered as whole, are not considered as workplace harassment where court would grant relief.").

a veteran to calm down in the office because he was not being shot at"; managers referred to another veteran as "thumbs" to mock a combat related hand-injury; other co-workers claimed "that veterans 'game' or 'milk' the system"; "a coworker commented that veterans are brainwashed"; and he was "told to suck it up because [he] served in the military." *Id.* at 10–11. Joshghani believes that Stonestreet's position make his comments "inherently severe," and the fact that coworkers made their comments openly makes it that ServiceSource "should have known of the harassment." *Id.* at 11. Ultimately, Joshghani argues that a reasonable jury could find in his favor because "[h]ostility existed in the general work atmosphere and was directed at [him]." *Id.*

To prevail on hostile work environment claims,[9] a plaintiff must prove "that he is a member of the class of people . . . , that he was subject to unwelcome harassment, that the harassment resulted from his membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of his employment." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 921–22 (8th Cir. 2018) (citation omitted). When allegations of harassment involve non-supervisors, a plaintiff must prove "a fifth element: that the employer knew or should have known of the harassment and failed to take proper action." *Ryan v. Capital Contractors*, 679 F.3d 772, 778 (8th Cir. 2012) (citation omitted). To prove that harassment affected a term, condition, or privilege of employment, the plaintiff must show that the harassment was "both subjectively and objectively offensive, as well as extreme in nature and not merely rude

---

[9] Although the Eighth Circuit has not directly considered this issue, other courts have recognized that USERRA creates a cause of action for a hostile work environment claim because it includes language from Title VII that has been interpreted to authorize such claims. *See Hackett v. City of South Bend*, 956 F.3d 504, 508–09 (7th Cir. 2020). Given the textual similarity to Title VII, the Court will assume that a hostile work environment claim is properly analyzed under the Title VII framework. *See Id.* (taking this approach); *see also Annarumma v. City of High Springs*, 846 F. App'x 776, 785 (11th Cir. 2021) (same). Because the elements of a Title VII hostile work environment claim mirror that of the ADA, *see Warmington v. Board of Regents of Univ. of Minn.*, 998 F.3d 789, 799 (8th Cir. 2021), the Court analyzes the USERRA and ADA hostile claims under the same framework. Further, hostile work environment claims brought under the MHRA have been treated as equivalent to claims under the ADA. *See Shaver v. Independent Stave Co.*, 350 F.3d 716, 719 (8th Cir. 2003).

16

or unpleasant." *Id.* at 779 (quotation omitted). Courts thus "consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [the employee's] job performance." *Moses*, 894 F.3d at 922 (quotation omitted). But such claims are held to a demanding standard to "filter out . . . [s]imple teasing, offhand comments, and isolated incidents" which arise to "complaints concerning the ordinary tribulations of the workplace." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 519 (8th Cir. 2010).

Joshghani's allegations fall short of this standard. While he has identified unprofessional comments, he offers no evidence to show that those statements interfered with his employment or job performance or that they were physically threatening. In fact, Joshghani offers no evidence whatsoever about how he subjectively perceived the comments. *Jones v. Forest City Grocery*, 564 F. Supp. 2d 863, 868 (E.D. Ark. 2008) ("The underlying wrongful conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." (citation omitted)). As he remained at ServiceSource for years, it is not apparent what term or condition Joshghani now believes was affected while he was working there. In other words, these statements are not sufficient to be actionable under any of the relevant statutes. Thus, ServiceSource is entitled to summary judgment because Joshghani has failed to present evidence to support a prima facie case of a hostile work environment claim.

### c. Failure to Promote

Next, ServiceSource seeks summary judgment on Joshghani's ADA and MHRA failure-to-promote claims. ServiceSource argues that Joshghani must put forward evidence that he sought but was denied a position to support these claims. Doc. 43 at 11. The company argues that Joshghani instead demonstrates "that he was trained for the [B]uyer position without applying"

17

while never seeking the position. *Id.* Joshghani briefly responds by alleging that ServiceSource "mischaracterizes" the claim. Doc. 50 at 11. Rather than being denied a position, Joshghani suggests his claim is premised on the theory that he was assigned "Buyer duties without the corresponding promotion and pay raise that similarly situated employees received for that role transition." *Id.* He contends that a non-disabled employee was given a promotion to that role, allowing a jury to find that "disability was a motivating factor in the failure to promote him." *Id.* ServiceSource, in turn, insists that the other employee's promotion fails to demonstrate that Joshghani "applied for, was eligible for, and was denied the same position." Doc. 53 at 4.

To establish a prima facie case for a failure-to-promote claim,[10] the plaintiff must prove that "(1) [he] is a member of a protected group; (2) [he] was qualified and applied for a promotion to an available position; (3) [he] was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Allen v. Tobacco Superstore*, 475 F.3d 931, 937 (8th Cir. 2007) (citation omitted). "Failure to formally apply for a [] position does not bar a plaintiff from establishing a prima facie claim, as long as the plaintiff 'made every reasonable attempt to convey [his] interest in the job to the employer.'" *Id.* (citation omitted). Claims under the MHRA apply these elements as well. *See Eivins v. Mo. Dep't Corr.*, 636 S.W.3d 155, 166–67 (Mo. Ct. App. 2021).

Joshghani's arguments are unpersuasive. At bottom, he believes that a failure-to-promote claim is actionable—without evidence that he sought or desired the position—simply because another person was promoted at a different time. Joshghani offers no legal support for this novel

---

[10] While there appears to be limited, if any, Eighth Circuit authority finding a failure-to-promote claim is actionable under the ADA, the Eighth Circuit's Model Jury Instructions 9.41 suggests that such a claim exists. Indeed, other courts have found that the claim is actionable and tracks the elements required to prove a Title VII failure-to-promote claim. *See, e.g.*, *Lusby v. Savannah River Nuclear Solutions, LLC*, 2022 WL 1057169, at *3 (D.S.C. Jan. 5, 2022). This Court likewise will apply the familiar Title VII failure-to-promote framework.

theory. Significantly, Joshghani "[did not] believe [ServiceSource] gave [him] extra responsibilities because of [his] disabilities," but rather because the company "want[ed] to take advantage of people." Doc. 43-1 at 167 ¶¶ 21–24. But he failed to establish not only that he wanted the position[11] but also that it went to someone else for an impermissible reason. In sum, Joshghani has failed to put forward evidence that he sought the position of Buyer and, as such, ServiceSource is entitled to summary judgment on these claims.

### d. Retaliation

Similarly, ServiceSource is entitled to summary judgment on the retaliation claims. The company argues that Joshghani cannot establish retaliation under the ADA or MHRA because he has not shown that he engaged in protected activity. Doc. 43 at 11. Specifically, ServiceSource notes that Joshghani has failed to indicate when he lodged a complaint for discrimination with his supervisor and that he made his EEOC complaint after his termination, meaning that it could not be a protected activity. *Id.* at 12–13. Joshghani, however, indicates that his protected activity happened when he "opposed being forced to perform additional job duties" because "[h]e believed these additional duties were assigned to him because he was []disabled." Doc. 50 at 12. In doing so, Joshghani claims he "reasonably believed that he was opposing practices that may violate the MHRA and/or ADA." *Id.* at 13. ServiceSource highlights this evolution in Joshghani's argument by noting that "vague workplace comments or internal disagreement about duties do not suffice unless they communicate opposition to unlawful discrimination." Doc. 54 at 6 (citations omitted). Thus, Joshghani's claim still fails because he never established that he communicated his perceived belief of unlawful employment practices to ServiceSource. *Id.*

---

[11] Indeed, his decision to decline the additional responsibilities as opposed to request a corresponding promotion undermines any argument that he wanted the position at all.

To establish a prima facie case for a retaliation claim, a plaintiff must prove "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Lors v. Dean*, 746 F.3d 857, 868 (8th Cir. 2014). Protected activity includes "oppos[ing] an action based on a reasonable belief that [his] employer has engaged in discriminatory conduct," even if the employer ultimately did not engage in such conduct. *Bevill v. Home Depot U.S.A.*, 753 F. Supp. 2d 816, 829–830 (S.D. Iowa 2009) (citing *Foster v. Time Warner Ent. Co.,* 250 F.3d 1189, 1194 (8th Cir. 2001)).

The Court assumes that Joshghani opposed what he subjectively believed to be unlawful employment practices when ServiceSource attempted to give him more responsibility without an increase in pay. Doc. 51 ¶ 31. But while Joshghani believes that he opposed unlawful discrimination, he has not offered evidence suggesting that anyone at ServiceSource understood that was the basis for his actions. To show retaliation under the ADA, courts have found that a plaintiff must demonstrate that the employer was apprised of the plaintiff's opposition to the practice was based on perceived discrimination. *See Bevill*, 753 F. Supp. 2d at 832. Because there must be a causal connection between the protected activity (Joshghani's opposition) and the adverse employment action (ServiceSource's decision to terminate him), Joshghani must cite some evidence to suggest that he made ServiceSource aware of the reason for his opposition. But there is no such evidence. *See* Doc. 49 ¶ 20 (responding to Defendants contention that Joshghani "did not report any complaints of discrimination" with "Plaintiff opposed discriminatory treatment by Defendant due to his veteran status"). Nor does Joshghani argue that he made ServiceSource aware that his refusal to take on additional responsibilities was because he believed it to be a discriminatory practice. As such, ServiceSource is entitled to summary judgment on Joshghani's retaliation claims because there is no genuine dispute of material fact.

### e.    USERRA Discrimination

Finally, ServiceSource moves for summary judgment on Joshghani's veteran-discrimination claim under USERRA. ServiceSource contends that Joshghani "cannot produce evidence that his veteran status was a substantial factor in his termination" and, even if it were, he still would have been terminated based on his "misconduct toward the female employee, not his military service." Doc. 43 at 15. Joshghani, however, claims "the record demonstrates that [his] veteran status was a motivating factor in the adverse employment actions of [ServiceSource]." Doc. 50 at 14. As before, Joshghani underscores the comments made by Stonestreet, other managers, and coworkers. *Id.* at 14–15. He believes that these comments, coupled with his "refusal of discriminatory treatment" and his firing, "creates a genuine dispute" as to veteran discrimination. *Id.* at 15.

A USERRA claim requires a plaintiff to "make the initial showing that military status was a motivating factor in the adverse employment action." *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011). Once the plaintiff meets that initial burden, then "the employer must prove, by a preponderance of the evidence, that the action would have been taken despite the protected status." *Id.* In evaluating whether an employee's military status is a motivating factor, a court "consider[s] a variety of factors, including the employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, the proximity in time between the employee's military activity and the adverse employment action, and any inconsistencies between the proffered reason and other actions of the employer." *Id.* at 1010–11 (citing *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)).

Joshghani has not met his initial burden. ServiceSource knew Joshghani was a veteran, *see* Doc. 15 ¶ 23, but the statements by his fellow employees do not show hostility on the part of ServiceSource. First, the comments by non-decisionmakers are generally discounted in

21

employment discrimination cases as "inactionable stray comment[s]." *See Schoonover v. Schneider Nat'l. Carriers*, 492 F. Supp. 2d 1103, 1129 n.24 (S.D. Iowa 2007) (collecting cases). Nor has Joshghani overcome this presumption by explaining why these comments were known by or should have been known by his employer. Further, USERRA caselaw suggests that, for discriminatory sentiment to lead to an actionable claim, the person harboring anti-military animus must have intended to influence the adverse employment action. *See Straub v. Proctor Hosp.*, 562 U.S. 411, 423 (2011). Stonestreet had influence on the decision to terminate Joshghani, Doc. 53 ¶ 27, meaning his animus would be relevant. But it is not clear how hearing Stonestreet tell another veteran to "calm down because he was not being shot at" is sufficient to show hostility to military members, even in the light most favorable to Joshghani. *See McConnell v. Anixter, Inc.*, 944 F.3d 985, 990 (8th Cir. 2019) (affirming summary judgment where alleged hostile-to-military-members statement was too ambiguous to support a USERRA claim). As such, Joshghani has not put forward sufficient evidence to support a USERRA claim.

## CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff Darius Joshghani's [39] Motion for Partial Summary Judgment as to his disability status and his reasonable mitigation of losses. Further, the Court, GRANTS **IN PART** and **DENIES IN PART** Defendant ServiceSource, Inc.'s [42] Motion for Summary Judgment, with Counts III (MHRA Discrimination) and VIII (ADA Discrimination) the only claims remaining for trial.

So ordered this 25th day of May 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

22